IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MARK J. SHOTWELL,                          :
                                           :
            Plaintiff,                     :
                                           :
      v.                                   : Civil Action No. 18-984-RGA
                                           :
DELAWARE DEPARTMENT OF                     :
SAFETY AND HOMELAND SECURITY, :
et al.,                                    :
                                           :
            Defendants.                    :

Mark J. Shotwell, Newark, Delaware. Pro Se Plaintiff.

Ryan Patrick Connell, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

## MEMORANDUM OPINION

March 23, 2020
Wilmington, Delaware

/s/ Richard G. Andrews
**ANDREWS, U.S. District Judge:**

Plaintiff Mark J. Shotwell filed this action pursuant to 42 U.S.C. § 1983.[1] (D.I. 2).
He appears pro se and has paid the filing fee. The original complaint was dismissed
and Plaintiff was given leave to amend. (D.I. 15, 16). An Amended Complaint was filed
on April 1, 2019. (D.I. 17). Before the Court is Defendants'[2] motion to dismiss the
Amended Complaint and Plaintiff's motion to seal a multi-media filing. (D.I. 18, 22).
Briefing is complete. (D.I. 19, 24, 25, 26).

## BACKGROUND

This case involves Plaintiff's arrest on July 3, 2016, the search of his home and
electronic devices, and excessive force. The Court takes judicial notice that on July 3,
2016, Plaintiff was arrested pursuant to an arrest warrant for a violation of 11 Del. C. §
1240, intent to threaten the life of or serious physical injury to a public official or public
servant. The charge is based upon allegations involving statements and threats made
to Detective Biddle on June 28, 2016 and July 3, 2016. (D.I. 12 at Ex. 1B). The Court
also takes judicial notice that on May 3, 2017, Plaintiff pled no contest to a disorderly
conduct charge for Plaintiff's acts of June 28, 2016, which is based upon some of the
same conduct that is recited in the arrest warrant affidavit for the threat charge. (D.I. 12

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has
deprived him of a federal right, and the person who caused the deprivation acted under
color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

[2] The motion is brought on behalf of all named Defendants. It is not brought on
behalf of "Unidentified Officers" listed as defendants in the caption and the parties to
suit section of the Amended Complaint. (See D.I. 17 at 1 and 3 at ¶ 12; D.I. 18 at n.1).

1

at 41-51, 55-58). There was a nolle prosequi on all remaining charges in the case. (Id. at 48).

When the original complaint was dismissed, Plaintiff was given leave to amend the unlawful search and excessive force claims, as well as a claim that misleading information was used to obtain a search warrant. (D.I. 15 at 9). Plaintiff's unlawful arrest claim was dismissed with prejudice as was the claim that the search took place pursuant to "general warrants." (Id. at 7, 10, 11). Plaintiff's Amended Complaint names additional defendants and raises a state-created danger claim, an unlawful search and seizure claim, a search warrant application claim, and an excessive force claim in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

In the Amended Complaint, Plaintiff states that he "wishes to preserve any additional details from his previous filings, pursuant to the unlawful search and excessive force claims." (D.I. 17 at 3). The Court, however, considers only the allegations contained in the Amended Complaint. To the extent Plaintiff intended the foregoing statement to incorporate by reference all allegations in the original Complaint, it does not do so.

Plaintiff now alleges that, on July 3, 2016, he arrived at his home to discover the presence of undercover and uniformed police officers leaving his home. (Id. at 4). Plaintiff was handcuffed and placed in the rear of a police car. Plaintiff suffers from anxiety attacks, and he asked an unidentified female police officer (presumably one of the Unidentified Officer Defendants) to have someone retrieve his medication from his backpack. (Id. at 4-5). Plaintiff was told that the medication from his backpack could not be given to him; he was asked if he was in need of medical assistance and needed

2

an ambulance. (*Id.* at 5). Plaintiff was taken to the entrance of State Police Troop 2, and then driven 6.6 miles to a medical aid facility in Newark, Delaware, a facility that was only 4.9 miles from the place where Plaintiff was originally arrested. (*Id.*). There were other medical facilities closer to Troop 2. (*Id.* at 6). The officer "intentionally delayed, whether by her own choice, or the directive of another officer, his medical treatment for no justifiable reason other than as a means of retributive punishment." (*Id.* at 5-6).

Plaintiff alleges that upon arrival at the Newark medical aid facility, Defendant Delaware State Police Sergeant Christopher Martin opened the door to remove Plaintiff from the police car. (*Id.* at 6). Plaintiff asked the unidentified female officer and another unidentified male officer to keep Martin away from him. (*Id.*) Martin "forcefully controlled Plaintiff and squeezed the already excessively tight handcuffs even tighter arounds his wrists." (*Id.*). Plaintiff continued to ask the two unidentified officers to keep Martin away from him. (*Id.*). Martin "forcefully shoved Plaintiff from the rear of the police vehicle with the handcuffs now tightly cutting off[f] his circulation to his hands, all the way into the waiting area of the medical aid facility." (*Id.*). The handcuffs were finally loosened by one of the officers when Plaintiff was taken for treatment. (*Id.*).

Plaintiff was transported to Troop 2 and placed in a holding cell. (*Id.* at 7). One to two hours later, he was removed from the holding cell and questioned by Defendant Delaware State Police Sergeant Matthew Taylor. (*Id.*). Plaintiff complained to Taylor that he still had visible ligature marks on his wrist from the handcuffs. (*Id.*).

Once released, Plaintiff returned home to a "completely ransacked residence." (*Id.*). Plaintiff became aware that the police had seized his desktop computers, laptop,

3

old cellular phones, digital storage devices, DVD's, and thumb drives. (*Id.*). Plaintiff learned through discovery in a criminal case brought against him that Cellebrite UFED (cellphone data extraction technology) had been used to search and seize data from his cellular phones, while another unnamed technology was used to search and seize data from his computers, digital storages, DVD's, and thumb drives. (*Id.* at 7-8). Plaintiff alleges these searches and seizures violated the Fourth Amendment of the United States Constitution and a similar provision of the Delaware Constitution. (*Id.* at 7-8).

Defendants move to dismiss pursuant to Rule 12(b)(6) for failure to state claims upon which relief may be granted, based on arguments relating to lack of personal involvement, the reasonableness of the search, the probable cause determination made by the issuing magistrate, and qualified immunity. Plaintiff responds that Defendants rely upon technical and rule arguments for dismissal and do not contest the claim that technologies were used to seize data from his electronic devices or that unrelated data was unreasonably searched and seized.[3] Plaintiff also argues that his *pro se* status affords him leniency in pleading standards.

## LEGAL STANDARDS

In reviewing a motion filed under Rule 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*,

---

[3] Plaintiff indicates that he is more than willing to provide a copy of the data that was seized from his electronic devices. (D.I. 24 at 2).

551 U.S. at 94. A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A Rule 12(b)(6) motion maybe granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S., 10 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

5

## DISCUSSION

**Eleventh Amendment.** The Amended Complaint adds Defendants Delaware Department of Safety and Homeland Security and the Delaware State Police. They move for dismissal based upon immunity from suit.

The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the kind of relief sought. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981). Delaware has not waived its immunity from suit in federal court; although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *See Jones v. Delaware State Police*, 779 F. App'x 834, 835 (3d Cir. 2019). One Defendant is a Department of the State of Delaware, and the other is an agency of the State of Delaware and, like the State, they both have immunity from suit under the Eleventh Amendment. In addition, dismissal is proper because neither defendant is a person for purposes of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Calhoun v. Young*, 288 F. App'x 47 (3d Cir. 2008).

The motion to dismiss Defendants Delaware Department of Safety and Homeland Security and the Delaware State Police will be granted as they are immune from suit.

**State-Created Danger.** The Amended Complaint adds a state-created danger claim against Defendants in violation of Plaintiff's rights under the Fourth and Fourteenth Amendment. (D.I. 17 at 8). The Amended Complaint alleges that the State:

6

(1) "created the legal framework governing the conduct" that led to the deprivation of Plaintiff's rights; (2) "knowingly accepted the benefits derived from unconstitutional behavior, with the implementation, and misuse, of technologies, such as Cellebrite UFED," that led to the violation of Plaintiff's rights; and (3) "provided significant encouragement of the use of technologies, such as Cellebrite UFED," that led to the violation of Plaintiff's rights. (*Id.* at 8-9).

"There is no affirmative right to governmental aid or protection under the Due Process Clause of the Fourteenth Amendment." *Ye v. United States*, 484 F.3d 634, 636 (3d Cir. 2007). However, an exception exists when state actors create a danger that causes a victim harm. *Id.* The Third Circuit has "recognized that a state actor may be held liable under the 'state-created danger' doctrine for creating danger to an individual in certain circumstances." *Henry v. City of Erie*, 728 F.3d 275, 281 (3d Cir. 2013) (citing *Morrow v. Balaski*, 719 F.3d 160, 176 (3d Cir. 2013)). Liability may attach "where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir 2013) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996)).

The "essential elements" of such a state-created danger claim are: "(1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts . . .; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Sanford v. Stiles*, 456 F.3d 298, 304-05 (3d Cir. 2006). As to the

7

fourth element, "[l]iability . . . is predicated upon the state['s] affirmative acts which work to plaintiff['s] detriment[] in terms of exposure to danger." *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1374 (3d Cir. 1992) (en banc).

The Amended Complaint is deficiently pled as it does not identify the danger to which Plaintiff was exposed that caused him harm.  In order to satisfy the fourth element of the state-created danger doctrine, a plaintiff must allege that state defendants affirmative acted in a way that exposed him to physical danger. *See Melendez v. Shack*, 2014 WL 2112365, at \*4-6 (D.N.J. May 20, 2014) (discussing Third Circuit precedent that state-created danger claims cannot proceed unless the plaintiff is exposed to physical danger). "Harm" and "danger" are distinct concepts under the state-created danger doctrine. *See Sanford v. Stiles*, 456 F.3d at 304-05 (noting that a foreseeable and fairly direct harm is the first element of the doctrine while an affirmative act that creates a danger is the fourth element of the doctrine).  Some district courts have concluded that a plaintiff must be exposed to physical danger to satisfy the fourth element of the state-created danger claim, *see Melendez v. Shack*, 2014 WL 2112365, at \*4, while other district courts have concluded that the plaintiff must sustain a physical harm as a result of such exposure, *see, e.g.*, *Holmes v. Geider*, 2011 WL 3497009, at \*2 n.5 (E.D. Pa. Aug.10, 2011) ("Because [plaintiff] has not alleged any harm resulted from Defendants' actions, except for his emotional distress, he also does not have a claim under the state-created danger theory); *Wright v. Evans*, 2009 WL 799946, at \*10 (D.N.J. Mar. 24, 2009) (suggesting that a state-created danger claim is viable only when the plaintiff is physically harmed).  The Amended Complaint specifically alleges that the "danger" causing Plaintiff "harm" was the use of technology to extract data from

8

Plaintiff's electronic devices. (See D.I. 17 at 8). It seems unlikely that Plaintiff can plead a state-created danger due process claim based upon the alleged underlying unlawful search and seizure of electronic evidence, and, to the extent that is Plaintiff's theory, it is rejected. Indeed, as to the second prong, and at least as to the search of Plaintiff's home and his electronics, the conduct alleged is not so egregious or irrational as to shock the conscience. Other allegations in the Amended Complaint refer to excessive force because Plaintiff was handcuffed too tightly, but these facts are not referred to in the state-created danger section of the Amended Complaint. While it appears the handcuffing is not the danger that caused harm to Plaintiff, it is possible that Plaintiff means to allege that as the basis for a state-created danger claim. But, if that is Plaintiff's intent, he has not plausibly alleged that either.

Accordingly, the Court will grant Defendants' motion to dismiss the state-created danger claim. Plaintiff will be given leave to amend the claim as it relates to handcuffing, although I am dubious that he can do so.

**Personal Involvement**. Defendants move for dismissal of the claims raised against Delaware Department of Safety and Homeland Security Secretary Robert Coupe, former Delaware Department of Safety and Homeland Security Secretary Lewis Schiliro, Delaware State Police Colonel Nathanial McQueen, Delaware State Police Captain Jason Sapp, and Delaware State Police Captain Pete Sawyer for lack of personal involvement. Defendants note that the Amended Complaint seeks to hold the foregoing defendants liable in their "supervisory capacity," in that they maintained a policy, practice or custom which directly violated Plaintiff's constitutional rights, and "had proper policy and training been enacted and enforced regarding the search of cellular

9

phones and the seizure of accessible data, . . . Plaintiff's protected data would not have been unreasonably searched and seized." (D.I. 17 at 9-10).

Liability in a § 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct. In other words, Defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom., Taylor v. Barkes*, 575 U.S. 822 (2015). A plaintiff must plead that each defendant, through the official's own individual actions, has violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. at 676.

Moreover, it is well established that there is no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Such personal involvement may be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

There are no allegations in the Amended Complaint directed towards Coupe, Schiliro, or McQueen and, therefore, the Court will grant the motion to dismiss them as Defendants. Plaintiff responds that that he has documents that show the personal involvement of Schiliro and McQueen and provides them for my review. (D.I. 24 at 2; D.I. 24-1 at 1-18). The documents (which do not hint at any personal involvement in the complained-of searches) are not referred to in the Amended Complaint and are outside the pleadings. To the extent Plaintiff adds new facts, he may not amend through his

10

opposition brief and supporting documents, and the new facts may not be considered by the Court on the instant motion to dismiss. *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Because, however, it would be futile to try to amend to state claims against Schiliro and/or McQueen simply because their signatures or authorizations appear in relation to the purchase of Cellebrite equipment, Plaintiff will not be given leave to amend the claims against either of them.

With regard to Sawyer, the Amended Complaint alleges generally that Sawyer, as a commanding officer, failed to supervise those under his command with regard to the excessive force and unreasonable search and seizure claims raised by Plaintiff. The allegations do not suffice to state claims against Sawyer. There are no allegations that Sawyer had any involvement in the excessive force or the unlawful search and seizure or that he acquiesced in the unlawful actions. Defendants' motion to dismiss the claims against Sawyer will be granted.

With regard to Sapp, Plaintiff alleges that he had numerous conversations with Sapp regarding the actions and conduct of officers under his command, that Sapp informed Plaintiff that he had spoken with various officers about Plaintiff's concerns and that Sapp told Plaintiff that various officers had been directed to perform duties "which would never happen," which I understand to be an allegation that either Sapp never told them or that he did tell them and then they did not do whatever they had been instructed to do. (D.I. 17 at 11). None of these allegations rise to the level of a constitutional violation. Plaintiff also alleges that Sapp's knowledge and professional action or inaction make him liable for the excessive force claims as alleged. There are no

allegations that Sapp had any involvement in the excessive force. The Amended Complaint alleges that Sapp has supervisory liability "associated with the technologies used to perform the searches on Plaintiff's electronics." (Id.). Again, there are no allegations of Sapp's personal involvement in this regard and there is no respondeat superior liability under § 1983. Defendants' motion to dismiss the claim against Sapp will be granted.

Finally, the Amended Complaint alleges that: (1) had proper policy and training been enacted and enforced, Plaintiff's protected data would not have been unreasonably searched and seized; and (2) Sawyer failed to meet his responsibilities to properly train those under his command to perform their duties in accordance with state and federal law and Delaware State Police standards and procedures.

"Under Section 1983, a supervisor may be liable for [his] failure to train or supervise [his] employees. . . ." Whitfield v. City of Philadelphia, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. See Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989).

Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," City of Canton v. Ohio, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable. In addition,

> In resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id.* at 390-91 (discussing *Monell* liability).

The Amended Complaint contains conclusory failure to train allegations. The bare allegations, without further explanation, are insufficient to plausibly allege that there is a specific policy or custom regarding the search of electronics and seizure of accessible data. Nor do the very general allegations that Sawyer failed to meet his responsibilities to properly train those under his command to perform their duties in accordance with state and federal law and Delaware State Police standards and procedures state a failure to train claim. Moreover, a § 1983 plaintiff must identify a failure to provide specific training that has a causal nexus with their injury. *See Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). The Amended Complaint fails in this regard. In effect, Plaintiff is attempting to assert untenable claims for vicarious liability against various supervisors by couching them in the language of a failure to train claim.

For all of these reasons, the Court will grant Defendants' motion to dismiss the claims against Delaware Department of Safety and Homeland Security Secretary Robert Coupe, former Delaware Department of Safety and Homeland Security Secretary Lewis Schiliro, Delaware State Police Colonel Nathaniel McQueen, Delaware State Police Captain Jason Sapp, and Delaware State Police Captain Pete Sawyer.

**Unlawful Search or Excessive Search of Electronics.** Defendants move for

dismissal of the claim against Defendant Delaware State Police Detective Gatti that he

performed an unreasonable or excessive search of electronic data in executing a

search warrant. The search warrant described the things to be searched for and seized

as all electronic and media devices, documents, and photos, which would be read in

conjunction with the affidavit's paragraph seven, which describes that those items would

document the "conducting [of] internet searches for such purposes as locating

individuals as well as to obtain names and other identifying information including

photographs of family members as well as to post messages to be viewed on the

internet." (D.I. 19-1 at 9, 13).

The Amended Complaint alleges that Gatti performed searches and seizures on

Plaintiff's personal electronics and digital media storage devices. (D.I. 17 at 12). The

Amended Complaint alleges that Gatti's "highly intrusive searches" were "well beyond

the scope of any search warrant," and that Gatti used "keywords" not associated with

any allegation, statement, or party mentioned in the Affidavits. (*Id.*). The Amended

Complaint alleges that Gatti was careless and reckless during the search and "phished"

(sic) through enormous amounts of Plaintiff's private and protected data, for which he

had no legal basis. (*Id.* at 12-13). Defendants argue the claim fails as a matter of law,

that the warrants were valid in form and scope, and Gatti was legally permitted to

search and seize data within the scope of the warrant.

A § 1983 claim has two essential elements: (1) the conduct complained of must

be "committed by a person acting under color of state law," and (2) the conduct must

"deprive [] a person of rights, privileges, or immunities secured by the Constitution or

14

laws of the United States." *Kost v. Kozakiewicz*, 1 F.3d 176, 194 (3d Cir. 1993) (internal quotation marks omitted). Plaintiff's Amended Complaint contains "sufficient factual matter" to support the plausibility of his § 1983 claim.

Liberally construing the allegations, as the Court must, the Amended Complaint alleges that Gatti, a state actor, deprived Plaintiff of his Fourth Amendment right to be secure against unreasonable searches and seizures when Gatti used keywords not associated with any allegation, statement, or party mentioned in the Affidavits and searched through enormous amounts of Plaintiff's private and protected data for information outside the scope of the warrant. Accordingly, the Court will deny the motion to dismiss this claim.

**Unreasonable Search and Seizure**. Defendants move to dismiss the illegal search claim raised in the Amended Complaint. The Amended Complaint seems to reinstate the previously dismissed unlawful search claim. (D.I. 17 at 19-22). The Amended Complaint again alleges that the warrants are general in nature. It also alleges that the warrants are overly broad, lack specificity, lack reasonable parameters, and that nothing in the affidavits or warrants support the seizure of all the electronic items in Plaintiff's home. (*Id.* at 20-21).

Plaintiff's revised allegations do not change the ruling in my March 6, 2019 Memorandum and Opinion. (D.I. 15, 16). "[T]he warrants speak with particularity as to the place to be searched and the items to be seized including . . . electronic devices." (*See* D.I. 15 at 10 & n.3). The Court will grant Defendants' motion to dismiss the unreasonable search and seizure claim raised in the Amended Complaint. (*See* D.I. 17 at 19-22).

15

**Search Warrant Application**. Defendants moves to dismiss the claim that Taylor submitted false or misleading information in the affidavit he submitted to support the search warrant application. The Amended Complaint alleges that Taylor omitted several exculpatory facts from the affidavits and, had those facts been included, the magistrate would have been unable to find probable cause to issue the warrants. (D.I. 17 at 13).

To establish a § 1983 claim that a search warrant was invalid because it was based upon false statements contained in the affidavit of probable cause, the plaintiff must allege: (1) the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) such statements or omissions are material, or necessary, to the finding of probable cause. *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)).

A false assertion of fact "is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quoting *United States v. Clapp*, 46 F.3d at 795, 801 n.6 (8th Cir. 1995)). Omissions "are made with reckless disregard if an officer withholds a fact in his [range of knowledge] that '[a]ny reasonable person would have known [] was the kind of thing the judge would wish to know.'" *Wilson*, 212 F.3d at 789 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)).

16

The Amended Complaint takes exception to paragraphs 2, 3, 5, 6, 7, and 8 of the affidavit in support of the issued warrants. The allegations about paragraphs 2, 3, 5, 6, 7, and 8 contain a fatal pleading flaw. In each paragraph, Plaintiff appears to effectively concede the literal accuracy of the statements and, therefore, the existence of probable cause.

Paragraph 2 speaks to harassing remarks made by Plaintiff and that Plaintiff knew where Troopers live and what type of vehicles they drive. (D.I. 19-2 at 6). While the Amended Complaint alleges that Plaintiff never harassed or threatened to do harm to any officer, it explains that Plaintiff "mentioned" he knew where an officer lived and what type of vehicle was parked in front of the officer's residence.

Paragraph 5 refers to a July 3, 2016 Plaintiff's post on Facebook that threatened Biddle and his family. (*Id.* at 6). The Amended Complaint does not deny the information appeared, but instead alleges that the information on the post could have been spoofed and that a "simple 'picture,' 'hash tag', and 'similar language' do not satisfy the necessary probable cause threshold." (D.I. 17 at 16).

In addition, as discussed in the Court's March 6, 2019 Memorandum, Plaintiff was arrested pursuant to an arrest warrant for violations of 11 Del. C. § 1240, intent to threaten the life of or serious physical injury to a public official or public servant, based upon statements and threats to Detective Biddle that occurred on June 28, 2016 and July 3, 2016. Plaintiff pled no contest to a disorderly conduct charge for Plaintiff's acts of June 28, 2016, which is based upon some of the same conduct that is alleged in the affidavit. (D.I. 12 at Ex. 1B).

Paragraph 3 discusses an ongoing second investigation assigned to Biddle that involved an Uber driver, Plaintiff, and another individual, and reports of threats and a sex crime. (D.I. 19-1 at 6). The Amended Complaint does not deny the existence of the investigation or the threats. Instead it contests that a robbery, kidnapping, and sex crime occurred.[4] (D.I. 17 at 15). While the Amended Complaint alleges that Plaintiff was not charged with any crimes related to the Uber incident, Paragraph 3 does not allege that he was.

Paragraphs 6 and 8 refer to photographs of weapons on Facebook and comments supporting gun ownership or "upgrading [Plaintiff's] ownership of firearms." (D.I. 19-1 at 7). The Amended Complaint alleges the statements intentionally omit that there were no pictures, posts or videos that indicated Plaintiff was in possession of firearms, but also alleges that the photographs on Facebook were "shared" or "liked" by others. (D.I. 17 at 17-18). As pled, the Amended Complaint concedes that photos of firearms were posted on Plaintiff's Facebook.

The Amended Complaint also challenges the portion of Paragraph 6 that stated, "through investigation it has been determined that Plaintiff has had, and may still have access to firearms, as they should have been turned in through a PFA." (*Id.* at 16). The Amended Complaint alleges that this portion of Paragraph 6 leads the reader to believe that Taylor actually conducted an investigation. The Amended Complaint alleges that Plaintiff had turned in his weapons, which were in the possession of the Delaware State Police, and he simply was not in possession of any firearms or ammunition. Paragraph

---

[4] Paragraph 2 does not mention kidnapping or robbery.

6 does not state that Plaintiff was in possession of firearms. When read in conjunction with other paragraphs in the affidavit, a reasonable person could conclude there was some degree of possibility that firearms were in Plaintiff's possession. In addition, while Plaintiff may disagree with this portion of Paragraph 6, it cannot be said that the statement is false.

Paragraph 7 refers to a prior arrest for possession of a deadly weapon during the commission of a felony and terroristic threatening. (D.I. 19-1 at 7). The Amended Complaint alleges that Plaintiff was a juvenile and was not convicted, but it does not dispute that Plaintiff was charged with those crimes. (D.I. 17 at 18).

In essence, the Amended Complaint does not allege any facts that would show there were any false statements and does not allege any knowing material omissions. It does not raise a reasonable expectation that discovery will reveal evidence of the necessary elements to state a claim that Taylor procured a deficient warrant through false statements and omissions. (*See* D.I. 24 at 2 (arguing that discovery will provide the necessary proof)). Therefore, Court will grant Defendants' motion to dismiss this claim.

**Excessive Force**. The Amended Complaint alleges Martin used excessive force when he intentionally tightened Plaintiff's handcuffs to such a degree that ligature marks were still visible on Plaintiff's wrist well over an hour after the handcuffs were removed. (D.I. 17 at 13). The Amended Complaint also alleges that Martin was one of the officers who refused to loosen the handcuffs when Plaintiff complained they were cutting off his circulation and causing him pain. (*Id.*).

Defendants argue that the "passing, conclusory statements" fail to state a claim, that the Amended Complaint is unclear on which officers were present when Plaintiff complained, and during what time. In addition, Defendants refer to allegations that Plaintiff received some medical treatment after he complained, and the injuries consisted of marks on his arms. (D.I. 17 at 6, 13). Finally, Defendants contend dismissal is warranted because there are no allegations Plaintiff sought medical treatment after he was released from police custody.[5]

Excessive force claims arising out of an arrest are analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386 (1989); *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Id.* "[T]he question is whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Johnson v. Watson*, 113 F. App'x 482, 486 (3d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. at 397).

Placement of excessively tight handcuffs and failure to respond in a timely fashion to the arrestee's pleas to loosen the handcuffs can constitute excessive force under certain circumstances. *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004). However, when an officer has no knowledge of an arrestee's distress caused by tight handcuffs, an excessive force claim fails. *Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir.

---

[5] Defendants submitted a video recording of an interview between Plaintiff and Taylor to support their claim that the video shows no injury to Plaintiff's arm. (*See* D.I. 21). The DVD is not considered by the Court on a motion to dismiss.

2005). The Third Circuit has also refused to find excessive force when a serious injury could not be demonstrated, despite the plaintiff's numerous objections to tight handcuffs. *Johnson v. Watson*, 113 F. App'x at 486.

Liberally construing the allegations as the Court must, Plaintiff has adequately alleged facts to proceed with his claim against Martin. The Amended Complaint alleges that he was handcuffed tightly and that Martin squeezed the already tight handcuffs even tighter around his wrists, that Plaintiff complained the cuffs were too tight and hurt, and officers did nothing. The Amended Complaint alleges that the handcuffs were not loosened until he was taken to see medical staff. Finally, it alleges that ligature marks were still visible one to two hours later. Defendants' motion to dismiss the excessive force claim will be denied.

**Qualified Immunity**. Finally, Defendants seek dismissal on qualified immunity grounds. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and quotation marks omitted). The question of "whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury." *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007). "[I]t is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009). A full analysis of whether qualified immunity applies

to Plaintiff's remaining claims against Defendants is premature because there are unresolved questions of fact relevant to the analysis.

Accordingly, the Court will deny the motion to dismiss on the grounds of a qualified immunity defense at this stage of the litigation, without prejudice to Defendants' ability to later raise the defense.

**Motion to Seal DVD**. Plaintiff moves to seal the DVD submitted by Defendants in support of their motion to dismiss. (D.I. 22). Plaintiff contends that he is embarrassed by the DVD, it is of limited evidentiary value, and was presented "to be prejudicial and defamatory to his true personal character." (*Id*. at 2). Defendants take no position on the motion. The motion will be granted. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (discussing factors considered in shielding materials from the public, including whether disclosure will cause embarrassment to a party).

## CONCLUSION

For the above reasons, the Court will: (1) grant in part and deny in part Defendants' motion to dismiss (D.I. 18); and (2) grant Plaintiff's motion to seal (D.I. 22). The search of electronic devices claim against Gatti and the excessive force claim against Martin survive the motion to dismiss. The Court will dismiss all other claims raised against the named Defendants. The Court makes no ruling on claims raised against Defendants listed as "Unidentified Officers." Plaintiff will be given leave to amend as to the state-created danger claim.

An appropriate order will be entered.